## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MARIANO CANSLER, *Individually*
*and on behalf of all others*
*similarly situated,*

      Plaintiff,

                                Case No:

  v.                         COLLECTIVE ACTION

VERIZON CONNECT FLEET USA LLC,

      Defendant.

_____.

## PLAINTIFF'S FLSA SECTION 216B COLLECTIVE ACTION COMPLAINT

Plaintiff MARIANO CANSLER, individually, and on behalf of all others similarly situated who consent to their inclusion in a collective action, sue Defendant, VERIZON CONNECT FLEET USA LLC. (hereinafter "Verizon" and/or "Defendant") for violations of 29 U.S.C. 201 et seq. of the Fair Labor Standards Act (the "FLSA"), and states as follows:

## INTRODUCTION

1.    Defendant has willfully FAILED to pay overtime wages to all Inside Sales Representatives (ISR) working under various job titles, some self-created, others created by the company such as: Business Development Representative (BDR), Business Development Managers (BDM), Account Managers, Closers, Consultants, Fleet Managers, Development Managers, Associate Sales Partners or

Sales Partners (aka Closers), Specialists, and other interchangeable or related job titles, all of which are now or were at one time, used to identify employees working as non-exempt, hourly paid Inside Sales Representatives.  All members of the putative classes were paid on an hourly, non-exempt status with a bonus plan based upon achieving a percentage to goal.

2.      In the previous FLSA Collective Action case in this District against Defendant for unpaid overtime wages *LAUREN GARNICK, TSHACHA ROMEO and COREY HANVEY, Individually, and on behalf of all others similarly situated, v. VERIZON CONNECT FLEET USA LLC*, Case No: 8:20-cv-01474, (MDFL) Verizon settled the claims of unpaid overtime wages (DE 143) for the Gross Settlement Amount of $3,200,000, which included claims for many "Sales Partners", aka "Closers".

3.      Similarly, in 2023, Defendant has agreed to pay or has paid a group of ISR the sum of 1.6 Million dollars to settle overtime wage claims in the case of *Santillan v. Verizon Connect Inc., case No. 3:2021cv01257, South District of California*.

4.      More recently, Defendant settled a Rule 23 Class action for All BDR and Sales Partners/Closers working in the states of Illinois and North Carolina in the sum of $1,050,000.00 in the case of *Mullins and Diaz v. Verizon Connect Fleet LLC*, Case no. 1:21-cv-4697-MLB, in the Northern District of Georgia.

5.      Defendant has maintained a scheme to avoid paying overtime wages to all its ISR nationally, and thus save and steal millions of dollars of wages owed to 1000 or more employees, by instituting a De Facto policy against reporting more than 40 hours of work per week and also intentionally not putting in place an accurate and contemporaneous time clock system after being made aware of its ISR having to suffer to work off the clock and without being paid for overtime premiums.

6.      Ironically, Defendant even WARNS the public of the risks of not properly tracking the work hours of non-exempt employees in their own literature and marketing materials easily found on the web: https://www.verizonconnect.com/resources/article/software-improves-time-card-reporting/ "**Accurate, Efficient, Simplified Timecard Reporting**".

7.      Plaintiff herein commences this legal action against Defendant for willful violations of federal and state wage and hour overtime pay laws and related regulations on behalf of all similarly situated current and former employees of Defendant who worked anytime in the preceding three (3) years to the present and continuing.

8.      Pursuant to a national, common policy and plan, Plaintiff, and the classes of similarly situated current and former employees worked under company assigned or self-created job titles, all used to describe the same inside sales position, including but not limited to the following: "Sales Partner", "Closer".  Plaintiff, and the classes of similarly situated employees, were unlawfully not compensated a

premium for all hours worked over forty (40) in each and every workweek by a scheme and plan of Defendant to evade the overtime wage laws and save many millions of dollars in labor costs to the detriment and harm of Plaintiff and all other Inside Sales Representatives.

9.       Indeed, just examining the complaint in *Garnick et. al. v.* Verizon Connect Fleet USA LLC, filed in June 2020, Verizon has known what had been going on, and armed with knowledge with settlements by its predecessor company, Fleetmatics USA, LLC., and the 186 Plaintiffs in the *Garnick FLSA collective action,* Verizon has known for years preceding this case that its BDR and Sales Partners were suffering to work off the clock without premium pay for overtime hours worked in violation of the FSLA.

10.      Defendant purposefully never instituted a simple time clock to rectify its continuous unlawful conduct of permitting ISR, who are hourly paid, -nonexempt employees to suffer to work off the clock without overtime pay.

11.      This same gaping hole in their procedures was brough to their attention in numerous lawsuits preceding this one, and yet NCR has chosen to turn a blind eye to the off the clock work and to pass of its time and record keeping obligations under the FLSA to the unsophisticated confused employees and blame them when they are not paid for all their overtime work hours.

12.      While Defendant did have some system for hourly employees to report work hours, the Defendant still violated 29 CFR Part 516.  Alternatively, even if

later a court concludes the system used satisfies 29 CFR Part 516 record keeping requirements, they were wholly inaccurate and unreliable as Defendant did not track and record the actual times employees started working, took breaks, and left for the day. Even managers just entered work hours for and on behalf of ISR.

13.     Defendant absolutely knows that Inside Sales Representatives routinely worked overtime hours, as managers and supervisors witnessed the extra hours, and encouraged to work as many hours as possible to hit quotas and meet goals.

14.     Moreover, Defendant never asked employees to leave after the shift ended, never prohibited them from working prior to the shift time, and witnessed and knew that employees, including Plaintiff, routinely worked through some or all of the (1) one hour provided meal break as to which Defendant took an automatic one (1) hour deduction from the total work hours each day, regardless of whether Inside Sales Representatives took such uninterrupted meal breaks of 20 minutes or simply worked throughout the entire meal break time.

15.     Defendant simply turned a "blind eye" to all of the off the clock work for numerous reasons, while pressuring, coercing, intimidating and encouraging Inside Sales Representatives to work as many hours as necessary to hit their quotas, metrics and production goals.

16.     Defendant has willfully failed to pay Plaintiff, and all similarly situated persons, in accordance with the Fair Labor Standards Act (FLSA).  Specifically, Plaintiff, and similarly situated employees, were not paid time and one half of their

regular rate of pay for all hours worked in excess of forty (40) hours per week, nor paid a premium for all overtime hours worked.

17.     Plaintiff, and the class of similarly situated employees, did not and currently do not perform work that meets the definition of any exemption under the FLSA, and the Defendant's pay practices are not only clearly unlawful, but UNFAIR as well.

18.     In this pleading, the term "Inside Sales Representative" means any employee of Defendant working under the various titles of:  "Account Executive", "Closer", "Associate Sales Partner", "Sales Partner", or any other title or position, where employees perform substantially the same work as the Sales Partner.

19.     In this pleading, "Defendant" means the named Defendant and any other subsidiary or affiliated and wholly owned corporation, organization or entity responsible for the employment practices complained of herein (discovery may reveal additional defendants that should be included).

20.     The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proof, or persuasion.  Plaintiff reserves all rights to plead in the alternative.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because this action involves a federal question under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

22.    This Court is empowered to issue a declaratory judgment under 28 U.S.C.§§ 2201 and 2202.

23.    This Court has general jurisdiction over this action because the Defendant has and continues to operate a fixed office in this district in Tampa, Florida.

24.    Venue is proper to this Court pursuant to 28 U.S.C. Sec. 1391(b) because the Defendant's has and continues to operate a fixed office in this district in Tampa, Florida.

## THE PARTIES

25.    Plaintiff Mariano Cansler is a citizen of Florida.  He worked for Defendant as a Sales Partner and Closer for more than the last 3 years, with his employment dating back approximately 12 years when the company was known as Fleetmatics USA LLC, and after this company was purchased and rebranded as Verizon Connect Fleet USA LLC from approximately 2018 until 2023.   Prior to Covid, Cansler worked at Defendant's office in Tampa and/or Temple Terrace, FL. In approximately 2020, Plaintiff Cansler commenced working remotely from his home but still reported to the Tampa, FL office.

26.    Plaintiff's primary job duty as a Sales Partner was to attend sales demonstrations and meetings scheduled by BDR with "warm" leads, businesses who were qualified and expressed interest in purchasing Defendant's SAAS vehicle tracking hardware and software services for their respective fleets of vehicles.

27.     Plaintiff Cansler was the sales closer, the person brought into consummate the sale.

28.     The primary duty and function of the Closers, Sales Partner, or Associate Sales Partners is to attend appointments for demonstrations with potential business customers and attempt to close or make the sale of the Defendant's telematics products and services, namely GPS vehicle tracking and related services.

29.     All Closers, Sales Partners, or Associate Sales Partners, did not have the discretion and judgment to unilaterally make pricing decisions, nor did they create their own marketing plans for the Defendant's products and services.

30.     All Closers, Sales Partners, or Associate Sales Partners, had to submit weekly time sheets and just like BDR, and for much of the respective time until changes were made after the Garnick Lawsuit, were discouraged from submitting more than forty (40) hours per week and discouraged from claiming overtime wages.

31.     Plaintiff was at one time intentionally misled by Defendant to believe he was a salaried employee, and as well as a salaried exempt employee who was not entitled to overtime pay.

32.     Defendant offered no explanation as to why Closers, Sales Partners, or Associate Sales Partners had to adhere to a corporate set schedules, submit time sheets, and prohibited them from submitting overtime hours, and were not paid for overtime hours.

33.     At all times material, Plaintiff was an employee of Defendant during the term of his employment as contemplated by 29 U.S.C. § 203.

34.     Investigation and history from the prior lawsuits has determined that Defendant actually had classified Plaintiff and all others similarly situated as non-exempt, hourly paid employees who were subject to the FLSA, including entitlement to overtime premiums for all hours worked more than 40 in each and every workweek.

35.     Plaintiff was paid a base hourly rate of pay but misled to believe it was a salary.  In addition, all Closers were placed on a monthly bonus structure based upon percentage to goal performance, such that if they met 100% of the goal or quota set by management there was a maximum sum in bonus money they could earn, and less in bonus money using a pro rata percentage of the sales goals met.

## DEFENDANT, VERIZON CONNECT FLEET USA LLC

36.     Defendant, VERIZON CONNECT FLEET USA LLC. (hereinafter "Defendant" and/or "Verizon"), is a Foreign Limited Liability Corporation, a wholly owned subsidiary of VERIZON COMMUNICATIONS INC., is a publicly traded corporation on the NYSE under the symbol VZ, and has a principal place of business located at 4211 West Boy Scout Boulevard # 3; Tampa, FL 33607.

37.     Defendant may be served through its Registered Agent for service of process, CT Corporation System, at 1200 Pine Island Road, Plantation FL 33224.

38.     As stated by Defendant on their website, Defendant is a company which offers: "Guiding a connected world on the go by automating, optimizing and revolutionizing the way people, vehicles and things move through the world".

39.     Defendant is an employer within the definition of the FLSA, has revenues exceeding $500,000 annually in all applicable time periods, and is involved in interstate commerce.

40.     Defendant provides fleet operators (companies or businesses with numerous vehicles) with an internet-based system that enhances workforce productivity through real time vehicle tracking, route optimization, job dispatch, and fuel usage monitoring.

41.     Competitors who also employ similar ISR such as Fleetcor and NEXTRAQ, have been caught numerous times stealing wages, and violating the FLSA for inside sales representatives through numerous unlawful pay practices, and when factoring in the settlements it has paid to BDR and Sales Partners *Gillard et al. v. Fleetmatics*; *Garnick et al. v. VERIZON CONNECT FLEET USA LLC, Santillan v. Verizon Connect Inc., and Simms v. Verizon Connect Fleet USA LLC,* , it is not believable  that Defendant Verizon has not already had more than enough reasons to have been aware of the unlawful pay practices complained of herein and continued to act with reckless disregard for the FLSA, if not willfully continuing to violate the FLSA.

42.     Thus, Defendant had a duty to have investigated, studied, audited, and assessed its pay practices and its federal and state law duties and obligations and determine if it was in compliance; and the failure to have done so subjects it to payment of liquidated damages, a three (3) year statute of limitations for FLSA violations.

## FACTUAL AND COLLECTIVE ACTION ALLEGATIONS

43.     This collective action arises from a longstanding and continuing wrongful scheme by Defendant to: a) willfully fail to accurately and properly track and record the work hours of ISR, and b) willfully refuse to pay overtime wages to a large class of Inside Sales Representatives who Defendant knows or should have known, were working off the clock and working overtime hours without being paid for all such hours.

44.     Plaintiff brings this suit individually, and on behalf of all similarly situated persons composed of the following FLSA CLASS members:

**THE FLSA CLASS:**

> **All employees working as Inside Sales Representatives under the titles of: Account Executive, Closer, Associate Sales Partner, Sales Partner, or any other job titles used to describe the same position positions, who are currently employed by or were previously employed with Verizon Connect Fleet USA LLC working from or reporting go the office in Temple Terrace or Tampa, Florida within the three years preceding the filing of this lawsuit to the present, and who were not participants in the Garnick v. Verizon case.**

45.     Plaintiff is able to protect and represent the Collective or putative Class, is willing, able, and consents to doing so.

46.     Plaintiff has routinely worked more than forty (40) hours in workweeks throughout their terms of their employment with Defendant.

47.     Plaintiff worked at Defendant's Tampa/Temple Terrace, FL office where Defendant required Business Development Representatives and Closers to work Monday through Friday, nine (9) hours per day, forty-five (45) hours per work week at a minimum.

48.     Each day, the company has a standardized one (1) hour lunch break, where all ISR are expected and required to use this set one (1) hour time for a meal break or just for break time, without deviation.

49.     Thus for each nine (9) hour work day scheduled and assigned by Defendant, the company automatically deducts one (1) hour of pay for each day for this break and informs ISR to claim and report ONLY eight (8) hours in total if they worked the full shift of nine (9) hours, regardless of whether Plaintiff or any other ISR took 5 minutes of uninterrupted meal break, 10 minutes, or no uninterrupted break at all.

50.     Plaintiff alleges for himself, and on behalf of the putative class who elect to opt-in to this action, that they are entitled to unpaid wages from Defendant for overtime work for which they did not receive overtime premium pay, as required by the FLSA, including for all meal break times they worked through without pay.

51.     Defendant employs, upon information and belief and investigation, 50 or more Sales Partners at any given time during the past 3 years, and with turnover, the number could be 200 persons within this proposed class or collective group.

52.     All Closers were trained and expected to perform their job duties in a uniform, similar manner; and all are supervised and managed according to the same standards and uniform policies and procedures set by the Defendant.

53.     All Sales Partners aka Closers within this putative class here were treated and classified by Defendant as hourly, nonexempt employees.

54.     Sales Partners were purposefully misled by Defendant to believe it was, and is, lawful to take one (1) hour off of the forty-five (45) hour work schedule for a mandatory meal break deduction without regard or concern as to whether the employees ever took the full one hour break or worked through the allotted one (1) hour meal breaks.

55.     Said differently, Defendant failed to provide any mechanism and real opportunity for Plaintiff and all other Inside Sales Representatives to claim the times they worked through the one (1) hour meal breaks or to log in and out for breaks.

56.     The actual work hours of all the Inside Sales Representatives were never recorded by the Defendant. Instead, they instructed employees one time, every two weeks, to simply put on the payroll database or website, eight (8) hours for each full day worked, and forty (40) hours for each week, unless they missed a day.

57.     The company time reporting system as well is pre-populated with a total of eight (8) hours for each day and forty (40) hours for each workweek, and no boxes or lines to put in break times started or ended, nor any place to log in the actual times they started working each day or ceased working at the end of the day.

58.     Moreover, all Sales Partners were routinely advised subsequent to their acceptance of the offer to work for the Defendant, that the sales positions are "not 9 to 5" (40 hours per week) jobs.

59.     The Defendant maintained a company-wide policy throughout the relevant three (3) year class period of willfully refusing to pay overtime wages for all overtime hours worked for Sales Partners despite clear knowledge they have worked and continue to work overtime hours which are unreported and off the clock.

60.     As per the company pay stubs and electronically submitted timesheets, it's generally and almost always just going to say forty (40) hours worked each week and eighty (80) hours for the two (2) week period.

61.     All Closers had sales goals and quotas related to the number of appointments/demonstrations held and sales consummated.  The Closers' primary job duty is to sell the GPS tracking units, attend appointments set by the Business Development Representatives with other businesses, and demonstrate and sell the products over the internet.

62.     Defendant also created and maintained a De Facto policy that Sales Partners should not report more than 40 hours, or overtime hours, on the time sheets

unless pre-authorized, but all Sales Partners should work as many overtime hours as needed or required, off the clock and "on their own dime," to meet quotas, metrics and sales goals and thus keep their jobs.

63.     The primary job duties of all the Sales Partners/Closers was to make sales calls and internet demonstrations to other businesses, generally known as B2B sales.

64.     The overtime wage provisions set forth in FLSA §207 apply to Defendant, as it engages in interstate commerce.  Indeed, at all relevant times, Defendant engaged in interstate commerce and/or in the production of goods for commerce within the meaning of FLSA Sec. 203.

65.      The actual job duties performed by the Closers do not satisfy the elements of any exemptions within FLSA §213, as all perform routine jobs whose primary job duty was production, setting appointments for others to attempt to sell GPS tracking products or other products or services, or actually attending the appointments and making the sales pitches and demonstrations of the products and services.

66.     Plaintiff, as well as the members of the putative class of similarly situated persons routinely worked through part or all of their automatically deducted 1 hour lunch (aka meal) breaks, worked prior to or after the set and standardized nine (9) hour daily shift times, and also performed other work incidental to their job duties by working at home or outside the office making or receiving client phone calls,

sending or receiving and reading emails without being paid for all these additional work hours.

67.   Many sales calls and demonstrations had to take place in the evening hours lasting after the ending shift time to accommodate business owners and their officers so as not to disrupt their business during standard daily working hours.

68.   Plaintiff, and all other similarly situated employees are currently or have previously been covered under FLSA §207.

69.   Pursuant to FLSA §207, Defendant, as the employer of Plaintiff and other similarly situated ISR, was and is required to pay one and one-half times each employee's hourly rate for hours worked in excess of forty (40) hours per week.

70.   Defendant is fully aware that employees who work through lunches come in early and stay late, as management can clearly see them doing so and encourage employees to do so and take advantage of the additional time to meet production goals and quotes.

71.   Defendant was also fully aware that the nature of the position required and involved Sales Partners making and receiving telephone calls and sending and receiving emails outside the office, and at times accessing the company software, system and programs.

72.   Upon information and belief, all of the top performing Inside Sales Representatives, including Closers routinely worked overtime and extra hours and

there is a known direct correlation between the number of hours worked and the production and productivity of the sales employees.

73.     Defendant however, maintained a De Facto policy against ISR reporting overtime hours, or complaining about not being paid for all overtime hours worked each day and each week under fear and threat of scrutiny being brought upon them for incurring overtime hours.

74.     Sales Closers, like the appointment setters, the BDR, were all expected and required to work a minimum work schedule of 9 hour days, 5 days per week, equating to 45 hours per workweek.

75.     Defendant maintained a practice of automatically deducting 1 full hour of pay each day from Plaintiff and all others similarly situated, for meal breaks whether they were taken in part, or not at all, and despite the fact that Defendant willfully chose to preclude having this class of hourly paid non-exempt employees' clock in and out for these meal breaks.

76.     Throughout much of the time Plaintiff worked for Defendant, Defendant maintained a code of silence when it came to the time keeping and overtime wage regulations related to overtime hours, overtime wages, and bona fide meal breaks.

77.     Prior to the FLSA collective action lawsuit by Garnick in June 2020, and for a time thereafter, there as literally no meetings or discussions about the time

tracking requirements of the FLSA, or how to submit and claim overtime hours worked both inside and outside the office, including the 1 hour meal breaks.

78.     Even up through the time when Defendant settled the *Garnick v. Verizon Connect* Lawsuit, and all time up through the present, Defendant never polled and inquired with Plaintiff and other currently employed ISR about their unpaid overtime hours, or whether they too had worked off the clock and worked with taking less than the 1 full hour of automatically deduce meal break times.

79.     Defendant continued to turn a blind-eye as to the current employees' owed overtime wages, and never presented them with the opportunity even after settling these cases with present and former employees for their same unpaid overtime wages.

80.     Defendant does not presently, and has not throughout the relevant three (3) year class period, properly clocked, and accurately tracked or recorded the actual working hours and break times of each Closers working at, or reporting to the Tampa office.

81.     Plaintiff was never required to clock in and out any meal break times, nor report any meal breaks on the time sheets they electronically submitted, which were submitted at the end of the pay period instead of being contemporaneously clocked in and out and recorded each day.

82.     Defendant provided Plaintiff time sheets which reflected 40 hour work schedules, and thus pre-populated with the hours.

83.     Throughout the preceding 3 years defendant was made known that many ISR never even filed out or looked at the times sheets, and that managers or superiors were submitting time sheets on their behalf reflecting exactly 40 hours of work and 8 hours per day, regardless s of whether any bona fide meal breaks were taken or whether they commenced work prior to the shift or stayed after.

84.     All Inside Sales Representatives worked a similar schedule of five (5) days per week, typically from about 8:30 a.m. until 5:30 p.m.  All shifts are nine (9) hour days with one hour allotted for lunch breaks but without any requirement to report the lunch break times.

85.     In order to meet sales quotas and maximize their commission and bonus, Plaintiff would routinely work as many overtime hours as they wished with the full knowledge, approval and encouragement of sales Managers/Directors and officers of the Defendant.

86.     Inside Sales Representatives were warned when falling short of quotas that their jobs could be terminated and encouraged to work as many hours as necessary and possible to hit goals and quotas; thus overtime hours increased towards the end of the month by many ISR.

87.     Throughout most of plaintiff's employment there was never any discussion or meetings about bona fide meal breaks nor any encouragement or permission to report the actual, non-working break times taken when less than 1 full hours, or when not taken at all as an uninterrupted 1 full hour meal break s.

88.     Said differently, Plaintiff never was informed and trained that he could claim for instance the 1 full hour of break time deducted as owed to him if he took less than the FLSA's minimum declared bona fide, non-working meal break of 30 minutes or less.

89.     Similarly, Plaintiff was never trained that he had the opportunity and the legal right to claim any part of this 1-hour time as unpaid overtime wages and compensable time by reporting the actual break times, if any he took during the day.

90.     Plaintiff was never trained on what a bona fide meal break was and the laws and regulations requiring meal breaks to be non-working and 100% relieved of work duties to be bona fide and thus not also compensable and owed time.

91.     Defendant was aware that ISR, including BDR and Closers were working off the clock, working more hours than reported, including coming in early, working during allotted meal breaks and staying late, and the company policies and procedures did not provide or allow for accurate reporting of meal break times or the right to claim times actually if at all taken as meal breaks.

92.     Moreover, Defendant was keenly aware from the prior FLSA cases it settled that it had a history of permitting ISR to suffer to work off the clock, and stealing hour of time each date for meal breaks not taken in part or whole, and without being paid premiums for all these overtime hours worked.

## COUNT I
## VIOLATIONS OF FLSA §207 AND DECLARATORY ACTION
## PURSUANT TO 28 U.S.C. SECTIONS 2201 and 2202

93.     Plaintiff alleges and incorporates by reference the foregoing paragraphs of this Complaint and fully restates and realleges all facts and claims herein as if fully stated.

94.     Defendant has willfully and intentionally engaged in a common company pattern and practice of violating the provisions of the FLSA, by failing to pay all Inside Sales Representatives, under the various job titles identified in this complaint, required overtime wages for all hours worked.

95.     Plaintiff, and all other Closers and Sales Partners routinely worked through some or all of the one (1) hour meal break provided, and as such all-time should have been counted as compensable overtime hours during any workweek that Plaintiff and all others similarly situated worked the rest of the forty (40) hour shift times.

96.     Defendant knew that Plaintiff and ISRs routinely worked through some or all of this 1 hour provided lunch break and knew that working while eating was thus not an uninterrupted meal break and that its employees were not able to have reported this time as compensable time.

97.     This is not a situation where the Verizon clocked out everyone for exactly 1 hour from 12 pm to 1pm and put this break times on their time sheets; no, Defendant simply just took 1 hour from their 9 hour days without question or any

real policy or procedure for Plaintiff and others similarly situated to claim some or all of this break time as compensable and owed overtime hours.

98.    Plaintiff was misled to believe that this 1-hour break time was not up for discussion or challenge, and that performing work during a break meant the time also could all be claimed as compensable and unpaid overtime hours.

99.    Plaintiff routinely each day did not take 1 full hour of non-working, uninterrupted meal break times and did not report his actual bona fide meal breaks, if any he took, on the time sheets, as the same was not encouraged nor required. Thus, Plaintiff routinely incurred each workweek unpaid overtime each week just from not taking these 1 hour uninterrupted meal breaks, not including the other hours of unpaid overtime he routinely worked prior to or after the corporate scheduled shift each week.

100.    Employees were not given any real opportunity to report and claim these compensable meal break hours, or the times spent on telephone calls and emails outside the office, and the company time reporting system did not provide for any contemporaneous time tracking in which breaks were logged in and out or the actual start or ending times for the day were actually logged.

101.    Similarly, all ISR, including Plaintiff, were permitted to commence working prior to the shift times, but likewise, there was no means to clock in when they started working.

102.    Plaintiff and other ISR also routinely worked after the ending shift time and were discouraged by management from claiming and reporting these overtime hours.

103.    The Closer positions, because of the nature of the business being B2B, involved having to communicate with customers after business hours, and even on weekends by telephone and email.

104.    Defendant had a duty and obligation under the FLSA, and as per CFR part 516, to contemporaneously track and record all work hours of hourly non-exempt employees, including Closers.

105.    As Defendant failed to institute any actual time tracking system or time clock for employees to log in and out their ACTUAL work times, the system left Plaintiff, and all other ISR subject to working off the clock and routinely working overtime, compensable hours without being paid for all the hours worked.

106.    Defendant's conduct and actions of turning a blind eye, ignoring the fact that time sheets showing eight (8) hours every day, and forty (40) hours every week were clearly known to be inaccurate and an understatement of Plaintiff' and all other ISR actual working hours, resulted in a willful violation of the overtime wage law of Section 207 of the FLSA.

107.    Defendant's actions constitute permitting Plaintiff and all other ISR to suffer to work off the clock without being paid for all hours, as literally there was no actual time clock.

108.   Defendant maintained a code of silence as to discussing overtime hours, overtime pay and any problems of employees knowingly exceeding the forty (40) hour workweek by coming in early, working through meal breaks and staying late while their time sheets reflect only forty (40) hours for the week and eight (8) hours for the day.

109.   At any given time, managers and supervisors were aware of Plaintiff and Closers coming in and working early, working through meal breaks and staying late and that their time sheets were inaccurate and not capturing all their work hours.

110.   Some managers simply filled in forty (40) hours for each workweek of Closers, knowing this to be false, inaccurate and resulting in the employees involved not being paid for all hours worked, because management maintained a policy of discouraging them from reporting all overtime hours worked.

111.   Sales Closers/Partners were discouraged from reporting all their actual work hours, including overtime hours, and told to focus on sales commissions, and even forewarned that overtime hours reported had to be pre-approved.

112.   Meanwhile, Plaintiff and the other ISR could commence work early as they wanted, stay after the shift, and work during or without any uninterrupted meal breaks and access the company computers systems, emails and phone systems without any concerns by Verizon of whether the employees were working off the clock when doing so or if their time sheets were accurate or not.

113.    Throughout much of Plaintiff's terms of employment, the Defendant maintained a De Facto policy was that ISR could work as many hours as they want, and never take the full 1-hour meal breaks uninterrupted as long as they did not report all those overtime hours without pre-approval.

114.   Plaintiff did not claim or report all his actual work hours, and his superiors knew this, as did Defendant. They could see him logging in and accessing systems, programs, being on phone calls and sending emails for hours not clocked or reported.

115.   Defendant has willfully and with reckless disregard for the requirements of the FLSA and its regulations, failed to pay Plaintiff and the Putative Class, comprised of all current and former similarly situated ISR a premium or overtime wages for all work hours over (40) hours in one or more work weeks as mandated by FLSA §207.

116.   Defendant does not have a good faith basis for these described unlawful pay practices, such that Plaintiff and each and every member of the putative class is entitled to be paid an equal sum in overtime wages owed at rates of one- and one-half times their respective regular rates of pay as liquidated damages. *See Johnson v. Big Lots Stores, Inc.*, 604 F.Supp.2d 903 at 925 (E.D. La. 2009).

117.   Defendant knowingly and willfully failed to track the hours worked by Plaintiff and the class of similarly situated employees.

118.    Defendant suggested, encouraged sales closers to work as many hours as they could to meet or exceed sales goals, and has direct knowledge of ISR working overtime hours.

119.    By failing to record, report, and/or preserve records of all minutes and hours worked by Plaintiff and the class of similarly situated ISR, Defendant has failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA 29 USC 201 et. seq., including 29 USC Sec. 211(c) and 215 (a).

120.    Defendant knew or should have known that the act of permitting ISR such Closers to work off the clock and without a clock, including working through meal breaks, coming in early, staying late was grossly insufficient and evades the wage and hour requirements of the FLSA such that a three (3) year statute of limitations applies.

121.    Defendant knew and knows now, that overtime wages are to be paid at one- and one-half times the employees' regular rates of pay to include all compensation/bonuses earned but, as a means to save hundreds of millions of dollars in labor costs, willfully created policies and procedures to limit and avoid paying employees the overtime wages due and owing.

122.    To summarize, Defendant has willfully and lacking in good faith, violated the FLSA by the following unlawful pay practices applicable to Plaintiff,

and the class of similarly situated persons:  a) Willfully instituting and maintaining a deficient, inaccurate time tracking system to the harm and detriment of all other ISRs; b) maintaining a De Facto policy against reporting all overtime hours worked, including working during some or all of the 1 hour break times automately taken from their pay each day; and c) permitting Plaintiff and all other ISRs to suffer to work off the clock without being paid for all hours worked.

123.   As a result of the prior FLSA Section 216b collective action lawsuits by *mentioned herein*, all the above such cases which Defendant settled and paid out millions of dollars to ISR, including sales partners/closers for unpaid overtime hours during some of the same class period as the 3 years preceding the complaint at issue herein,  Defendant was keenly aware of its history of violating the FLSA and stealing wages from non-exempt employees, including Plaintiff and all other similarly situated ISRs, yet, continued to maintain unlawful procedures, policies, including a De Facto policy against reporting all overtime hours worked as to which deprive Plaintiff and all other ISRs their overtime wages earned.

124.   As a result of Defendant's willful violations of the FLSA, Plaintiff and the putative Class have suffered economic damages by Defendant's failure to pay overtime compensation in accordance with FLSA §207.

125.   Due to Defendant's willful violations of the FLSA, a three-year statute of limitations applies to the FLSA violations pursuant to 29 U.S.C. §255(a).

126.   As a result of Defendant's unlawful acts and pay practices described herein, Plaintiff and the Putative Class of all other similarly situated Sales Partners, Closers etc. have been deprived of overtime compensation in amounts to be determined at trial; and are entitled to recovery of such amounts, liquidated damages in amount equal to the overtime wages due, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. §216(b), as well as injunctive relief pursuant to 29 U.S.C. §217.

**WHEREFORE,** Plaintiff Mariano Cansler individually, and on behalf of all other similarly situated past and present Sales Partners and Closers, seek the following relief:

      a. Designate Plaintiff Cansler as Representative of the FLSA Collective Class and award him a service fee or award for bringing this action on behalf of all others similarly situated.

      b. That the Court find and declare Defendant has willfully violated the overtime compensation provisions of the FLSA;

      c. That the Court find and declare Defendant's violations of the FLSA overtime laws were and are willful and lacking a good faith basis for complying with the state and federal overtime laws;

d. That the Court enjoin Defendant, under 29 U.S.C. § 217, from withholding future payments of overtime compensation owed to members of the FLSA Class;

e. That the Court award to Plaintiff Cansler, and the FLSA Class, comprised of all similarly situated employees, overtime compensation at a rate of one and one half times their regular rates of pay, including the value of all compensation earned, for previous hours worked in excess of forty (40) for any given week during the past three years AND liquidated damages of an equal amount of the overtime compensation, in addition to penalties and interest on said award pursuant to FLSA §216 and all other related economic losses;

f. That the Court award Plaintiff and the plaintiffs who opt into this action, recovery of their reasonable attorneys' fees, costs and expenses of litigation pursuant to FLSA § 216;

g. That the Court finds Defendant willfully, and with a lack of good faith, violated the overtime provisions of the FLSA, including the time tracking requirements for non-exempt employees;

h. That the Court apply a three (3) year statute of limitations to the FLSA claims;

i.  That the Court award any other legal and equitable relief as this Court may deem fair, just or appropriate.

## **<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Respectfully submitted September 26, 2023.

*/s/Mitchell L. Feldman, Esquire*
**Mitchell L. Feldman, Esq**
Florida Bar No.: 080349
FELDMAN LEGAL GROUP
6916 W. Linebaugh Ave #101
Tampa, Fl 33625
Tele: (813) 639-9366
Fax: (813) 639-9376
mfeldman@flandgatrialattorneys.com
*Lead Attorney for Plaintiff and the class of similarly situated*